**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GATHAN M. EPHRIM,

       Plaintiff,

v.                                     No. CV 18-63 CG

NANCY A. BERRYHILL,
Acting Commissioner for the
Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Gathan M. Ephrim's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 17), filed June 5, 2018; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion* (the "Response"), (Doc. 19), filed August 13, 2018; and Mr. Ephrim's *Reply to Brief in Response* (the "Reply"), (Doc. 20), filed August 24, 2018.

Mr. Ephrim filed an application for disability insurance benefits and supplemental security income on November 20, 2013. (Administrative Record "AR" 25). In both of his applications, Mr. Ephrim alleged disability beginning October 2, 2011. (AR 199, 206). Mr. Ephrim claimed he was limited in his ability to work due to: bipolar disorder; post-traumatic stress disorder ("PTSD"); anxiety disorder; and depression. (AR 228).

Mr. Ephrim's applications were denied initially on June 5, 2014 and upon reconsideration on January 2, 2015. (AR 129, 136). Mr. Ephrim requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 10, 2016 before ALJ James Bentley. (AR 46). Mr. Ephrim and Diana Kizer, an impartial vocational expert ("VE"), testified at the hearing and Mr. Ephrim was represented by

1

attorney Michelle Baca. (AR 46-73).

On December 8, 2016 the ALJ issued his decision, finding Mr. Ephrim not disabled at any time between his initial filing date, November 20, 2013, through the date of his decision. (AR 40). Mr. Ephrim requested review by the Appeals Council, (AR 1), which was denied, (AR 1-4), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal.

Mr. Ephrim, who is now represented by attorney Michael Armstrong, argues in his Motion that the ALJ: (1) failed to properly consider all of the moderate limitations assessed in the medical opinions of Paul Cherry, Ph.D., Charles Bridges, Ph.D., and Hammam Yahya, M.D.; (2) did not obtain adequate factual information about Mr. Ephrim's past relevant work and delegated the fact-finding to the VE; and (3) did not identify all of Mr. Ephrim's non-exertional limitations in his hypothetical posed to the VE. (Doc. 17 at 2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of Dr. Cherry, Dr. Bridges, and Dr. Yahya's medical assessments, the Court finds that Mr. Ephrim's Motion should be **GRANTED IN PART** and this case **REMANDED** for further proceedings.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the

correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.  Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

F.3d at 1261.

### III.    Background

Mr. Ephrim claimed he was limited in his ability to work due to: bipolar disorder; PTSD; anxiety disorder; and depression. (AR 228). At step one, the ALJ determined that Mr. Ephrim had not engaged in substantial gainful activity since October 2, 2011, the alleged disability onset date. (AR 27). At step two, the ALJ found that Mr. Ephrim has the following severe impairments: bipolar disorder type I; depressive disorder; PTSD; anxiety disorder; borderline personality disorder; opiate use disorder, on maintenance treatment; methamphetamine use disorder, active; status post complex volar hand laceration to the left hand; status post exploration; and repair of flexor tendons and digital nerves. *Id.*

At step three, the ALJ determined that none of Mr. Ephrim's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 29-31). At step four, the ALJ found that Mr. Ephrim has the RFC to perform a full range of work at all exertional levels with the following limitations: he can frequently, but not constantly, feel, handle, and finger with the left non-dominant hand; he is able to understand, remember, and carry out simple tasks with routine supervision; he is able to make simple work-related decisions; and he is limited to only occasional contact with coworkers, supervisors, and the general public. (AR 31).

In formulating Mr. Ephrim's RFC, the ALJ stated that he considered Mr. Ephrim's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§

5

404.1529, 416.929 and Social Security Ruling ("SSR") 96-4p. *Id.* The ALJ also stated

that he considered opinion evidence consistent with the requirements of 20 C.F.R. §§

404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, 06-3p. *Id.* The ALJ concluded that

some of Mr. Ephrim's impairments could be expected to cause his alleged symptoms,

but he found that the intensity, persistence, and limiting effects that Mr. Ephrim

described were not entirely consistent with the evidence in the record. (AR 32).

 In evaluating the medical evidence in the record, the ALJ stated that he gave

significant weight to the opinions of State Agency reviewing psychologists Dr. Cherry

and Dr. Bridges. (AR 35). The ALJ explained that the State Agency psychologists'

opinions were well supported, citing Mr. Ephrim's past medical responses to treatment

and prior longitudinal mental status examination findings. (AR 35-36). In addition, the

ALJ gave significant weight to the opinions of Dr. Yahya, Mr. Ephrim's treating

psychiatrist. (AR 35-36). Despite the ALJ's stated concern for inconsistencies found in

Dr. Yahya's medical source statement, he concluded that Dr. Yahya's final

determination that Mr. Ephrim suffers from only moderate limitations was well-supported

by his treatment notes. (AR 36).

 The ALJ also discussed the weight he gave to the opinions of other medical

professionals who evaluated Mr. Ephrim either on a one time or infrequent basis, such

as the healthcare providers at the University of New Mexico Health Sciences Center.

(AR 33-37). Further, the ALJ compared the different global assessment of functioning

("GAF") scores assigned to Mr. Ephrim and the medical evaluations accompanying

each score. *Id.*

 In addition to examining the psychological and psychiatric evidence, the ALJ

analyzed the evidence concerning Mr. Ephrim's physical health, principally the injury he sustained to his left hand. (AR 37-38). The ALJ described both Mr. Ephrim's treatment history and his testimony at the hearing regarding the symptoms he continued to experience. *Id.*

Next, the ALJ noted the third-party function report completed by Mr. Ephrim's grandmother, Andrea Gallegos [illegible]. (AR 38, 248). In her report, Ms. Gallegos stated that Mr. Ephrim always appears depressed and angry, "only leaves his room to smoke or eat or to use [sic] restroom," "rarely sleeps due to anxiety and racing thoughts," and "goes weeks without bathing." (AR 248-49). The ALJ concluded that Ms. Gallegos' opinions are entitled to diminished weight because she is not a medical professional, her statements are inconsistent with the record, and she cannot determine whether Mr. Ephrim's behaviors are medically compelled. (AR 38).

At step four, the ALJ found that Mr. Ephrim is able to perform his past relevant work as a park worker and nursery laborer. *Id.* In support of this conclusion, the ALJ cited the VE, opining that the occupation of a park worker is classified as unskilled work, requires only medium exertion, and has a Specific Vocational Preparation ("SVP") rating of two. (AR 39). The ALJ further explained that the occupation of a nursery laborer is also classified as unskilled work, requires heavy exertion, and similarly has an SVP rating of two. *Id.*

Despite the completion of his analysis at step four, the ALJ continued to step five, explaining that there are also other jobs existing in the national economy that Mr. Ephrim could perform. (AR 39). The ALJ noted that the VE testified at the hearing that an individual with Mr. Ephrim's same age, education, work experience, and RFC could

perform the jobs of laundry worker, floor waxer, and industrial cleaner. (AR 39-40). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the testimony of the VE and concluded that, because Mr. Ephrim is capable of performing both his past relevant work and other work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 40).

### IV.    Analysis

Mr. Ephrim presents three arguments in his Motion before the Court. First, Mr. Ephrim alleges the ALJ failed to account for all of the moderate limitations set forth in the opinions of Dr. Cherry, Dr. Bridges, and Dr. Yahya in his final RFC assessment. (Doc. 17 at 2). Next, Mr. Ephrim claims the ALJ did not obtain adequate factual information about the demands of his past relevant work, and instead delegated this responsibility to the VE. *Id.* Finally, regarding the ALJ's step five analysis, Mr. Ephrim alleges the ALJ erred in not including all of his non-exertional limitations in his hypothetical to the VE. *Id.*

In response, the Commissioner claims the ALJ's RFC assessment credits all of Mr. Ephrim's moderate limitations and is supported by the medical evidence in the record. (Doc. 19 at 9). In addition, the Commissioner contends the ALJ properly determined Mr. Ephrim's functional limitations, as instructed by law, while the VE correctly considered his impairments. (Doc. 19 at 15). Finally, the Commissioner concludes, there is no legally reversible error illustrated by Mr. Ephrim's step five argument. (Doc. 19 at 19-20).

*A. The ALJ's Consideration of Medical Opinion Evidence*

Although it is not required that an ALJ discuss every piece of evidence, he is required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Of course, it is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to weigh the medical source reports and provide "appropriate explanations" for accepting or rejecting the opinions. SSR 96-5p, 1996 WL 374183, at *5.

To aid in the ALJ's analysis, the Regulations set forth the following factors that should be considered when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (the "20 C.F.R. §§ 404.1527, 416.927 factors"). While not every factor will be applicable in every case, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted); *see also Oldham v.*

*Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In addition, the medical opinion of a treating physician is generally entitled to more weight than other sources, given the physician's treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Watkins*, 350 F.3d at 1300. Accordingly, an ALJ must follow a particular, two-step analysis when evaluating and weighing opinions from treating sources. *Watkins*, 350 F.3d at 1300-01. First, the ALJ must decide whether the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the answer to the first inquiry is in the affirmative, the ALJ then determines whether the physician's opinion is consistent with the other substantial evidence in the record. *Id.* In cases where both criteria are satisfied, the treating source's opinion is entitled to controlling weight. *Id.*

Even if a treating source's opinion is not entitled to controlling weight, it should still receive deference. SSR 96-2P, 1996 WL 374188, at *4. In deciding how much weight to give the opinion, the ALJ should consider the 20 C.F.R. §§ 404.1527, 416.927 factors. *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Id.* (citing *Watkins*, 350 F.3d at 1300-01); SSR 96-2p, 1996 WL 374188 at *5. Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on his own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d 1267 (citation omitted). Thus, this Court may only consider the reasoning proffered by the ALJ himself, and not any post hoc rationale provided by the Commissioner. *Robinson*, 366 F.3d at 1084 (citations omitted).

### i. *Medical Opinions of State Agency Psychologists Dr. Cherry and Dr. Bridges*

Mr. Ephrim first argues that the ALJ did not include all of the moderate limitations assessed by Dr. Cherry and Dr. Bridges in his RFC assessment. (Doc. 20 at 2). Specifically, Mr. Ephrim contends that the ALJ did not include, or otherwise discuss the exclusion of, the following limitations in his RFC assessment: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to travel to unfamiliar places or use public transportation. (Doc. 20 at 2-3).

The Commissioner responds by first arguing that the ALJ accounted for all of Mr. Ephrim's moderate limitations in his RFC assessment. (AR 6-9). Alternatively, the Commissioner contends, even if the ALJ did not account for all of Mr. Ephrim's

limitations in his final RFC assessment, he critically explained his reasoning for their exclusion. (AR 9).

On May 15, 2014, Dr. Cherry reviewed the evidence of record, (AR 75-77), and completed a Disability Determination Explanation, evaluating both Mr. Ephrim's claims for supplemental security income, (AR 74-84), and disability insurance benefits, (AR 85-95). In his Mental Functional Capacity Assessment, Dr. Cherry opined that Mr. Ephrim has moderate limitations in his abilities to: understand, carry out, and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted; complete a normal workday without interruptions from psychologically based symptoms; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. (AR 91-92). Dr. Cherry then concluded that, in reviewing Mr. Ephrim's medical history and the relevant evidence in the record, Mr. Ephrim is not disabled as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 83).

Dr. Bridges reviewed Dr. Cherry's report on December 18, 2014 and reconsidered the merits of Mr. Ephrim's claims. (AR 98). Dr. Bridges affirmed Dr. Cherry's findings and the limitations set forth in his Mental Functional Capacity Assessments. (AR 98-109). Dr. Bridges similarly concluded that Mr. Ephrim is not disabled as defined by the Social Security Act. (AR 109).

In his analysis of the State Agency psychologists' reports, the ALJ stated that he

afforded their medical opinions significant weight. (AR 35). Specifically, the ALJ opined that the State Agency psychologists' opinions were "predominantly consistent" and well-supported by other objective medical evidence in the longitudinal record. *Id.* The ALJ then further explained the supporting evidence that he found persuasive in Dr. Cherry and Dr. Bridges' assessments, including their reliance on an August 2014 medical report authored by Carol J. Capitano, Ph.D., a psychiatrist with the Recovery and Resiliency Program Clinic. *Id.* In addition, the ALJ provided examples of the mental status exam findings that he considered compelling, such as the State Agency psychologists' reference to the initial assessment Mr. Ephrim underwent during his incarceration at Metropolitan Detention Center. (AR 36).

Mr. Ephrim concedes the ALJ's RFC assessment incorporates several of the moderate limitations recognized by the State Agency psychologists, including his abilities to: understand, carry out, and remember detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them. (Doc. 20 at 2). In addition to the limitations that Mr. Ephrim acknowledges, the Court finds that one further limitation prescribed by the State Agency psychologists is incorporated within the ALJ's RFC assessment. By limiting Mr. Ephrim to only occasional contact with coworkers and supervisors, the ALJ's final RFC assessment incorporates the State Agency psychologists' prescribed limitation regarding Mr. Ephrim's ability to work in coordination with, or in proximity to, others without being distracted by them. *See* (AR 31). Although the ALJ did not verbatim recite this limitation in his final RFC assessment, his RFC is generally consistent with this limitation and it is thus adequately incorporated. *See*

*Keyes-Zachary*, 695 F.3d at 1163 (affirming the ALJ's RFC assessment because, although he did not expressly weigh the physician's opinion, his RFC was generally consistent with the physician's findings).

Next, of the remaining limitations prescribed by the State Agency psychologists that are not incorporated in the RFC assessment, the Court finds that the ALJ adequately discussed Mr. Ephrim's limitation in completing a 40-hour workweek without psychological interruption. In his analysis, the ALJ contrasts Mr. Ephrim's moderate limitation in interacting with the public, coworkers, and peers, with his difficulty in completing a 40-hour workweek without psychological interruption. *See* (AR 35) ("Their opinions as to claimant's social limitations were not vocationally specific, **in that they** found the claimant was moderately limited in the abilities to interact appropriately with the general public, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, **but was also** capable of completing a 40-hour workweek without psychological interruptions.") (emphasis added). By making this comparison, the ALJ discredits the State Agency psychologists' conclusion that Mr. Ephrim is limited in his ability to complete a 40-hour workweek, thus explaining the exclusion of this limitation from the final RFC assessment.

Ideally, the ALJ would attach a specific and direct explanation for his inclusion or exclusion of each medical opinion proffered in the case. However, this is not required by the Regulations, and such a direct relationship between each medical finding and the final RFC has never been necessary in this circuit. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Rather, the ALJ must merely articulate his decision in a clear manner, informing any subsequent

reviewer(s) of his reasoning. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Here, the ALJ has done just that.

Specifically, the ALJ relied on several of the 20 C.F.R. §§ 404.1527, 416.927 factors in his analysis. For example, the ALJ discussed the treatment relationship and the type of examination performed, (AR 35) ("they are acceptable medical sources in the field of psychological [sic] with program knowledge […]"), the degree to which the physicians' opinions are supported by relevant evidence, *id.* ("they cited to the claimant's response to treatment, including his report to Dr. Capitano […]"), the consistency between the opinions and the record as a whole, *id.* ("noting their predominant consistency, as well as the fact that they are well-supported by objective medical evidence"), and other facts brought to the ALJ's attention, *see* (AR 34-36) (e.g., Mr. Ephrim's prior drug use, his failure to appear for medical appointments, and his positive response to medication). *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). Therefore, the Court finds that excluding the State Agency psychologists' finding that Mr. Ephrim is limited in his ability to complete a 40-hour workweek without psychological interruption was proper.

Accordingly, the ALJ has either incorporated into the final RFC assessment, or otherwise adequately discussed the exclusion of, the following limitations prescribed by the State Agency psychologists: Mr. Ephrim's abilities to understand, carry out, and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Therefore, only two limitations found by the State Agency psychologists are unaddressed by the ALJ and not included in the final RFC: Mr. Ephrim's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and his ability to travel in unfamiliar places or use public transportation. *See* (AR 31, 35). The Commissioner suggests that by limiting Mr. Ephrim "to the least mentally-demanding work – simple work," the ALJ has adequately accounted for the remaining limitations assessed by the State Agency psychologists. (Doc. 19 at 10-12).

However, to withstand judicial scrutiny, the ALJ must do "much more than merely limit [the claimant] to simple work." *See Oceguera v. Colvin*, 658 Fed.Appx. 370, 374 (10th Cir. 2016) (unpublished). Indeed, such a "vague catch-all term," is not "sufficient to capture the various fundamentally distinct mental limitations" recognized by the State Agency psychologists in this case. *See Chapo v. Astrue*, 682 f.3d 1285, 1290 n.3 (10th Cir. 2012). In cases where a restriction limiting the claimant to simple work has been found to be sufficient, the limitations omitted from the ALJ's analysis are directly correlated to the claimant's ability to perform more demanding work. For example, in *Lee v. Colvin*, the ALJ did not discuss the claimant's limitation in performing complex tasks or meaningfully interacting with supervisors or peers. 631 Fed.Appx. 538, 540-41 (10th Cir. 2015) (unpublished). However, the *Lee* court concluded that the ALJ's RFC

assessment limiting the claimant to unskilled work accounted for these limitations that he failed to mention in his analysis. *Id.* Put simply, the *Lee* court found that unskilled work inherently implies not performing complex tasks or having meaningful interactions with supervisors or peers, and thus the ALJ had incorporated those limitations in the RFC assessment. *Id.*

Similarly, in *Smith v. Colvin*, the Tenth Circuit found that the claimant's limitation in managing social interactions was adequately accounted for by the ALJ's assessment that the claimant could not engage in face-to-face contact. 821 F.3d 1264, 1269 (10th Cir. 2016). In addition, the *Smith* court found that by limiting the claimant to simple, repetitive, and routine tasks, the ALJ had incorporated the claimant's limitation in engaging in complex work. *Id.*

Here, however, limiting Mr. Ephrim to unskilled work cannot be understood to imply that he is moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances –nor can it be construed to account for his limitation in traveling to unfamiliar places or using public transportation. Indeed, the ability to perform only unskilled work simply does not correlate to the limitations that the ALJ omitted from his analysis.

Next, the Commissioner sets forth two additional arguments. First, the Commissioner suggests that because Mr. Ephrim was assigned only moderate limitations, as opposed to extreme or marked limitations, the ALJ's RFC assessment is justified. *See* (Doc. 19 at 9, 11). However, the fact that Mr. Ephrim's limitations are not extreme or marked does not relieve the ALJ of his duty to discuss them or otherwise include them in his RFC assessment. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th

Cir. 2007) (opining that a "moderate impairment is not the same as no impairment at all.").

Second, the Commissioner attempts to distinguish between Dr. Yahya's conclusions and those stated by the State Agency psychologists. *See* (Doc. 19 at 12-13). Yet, whether the medical evidence in this case is contradictory and is thus justifiably omitted from Mr. Ephrim's RFC, is not for this Court to determine. Rather, the Commissioner's attempt to rationalize why the ALJ did not discuss all of Mr. Ephrim's limitations plainly constitutes a post hoc effort to "salvage the ALJ's decision." *See Robinson*, 366 F.3d at 1084-85. Therefore, the Court will not endeavor to guess as to why the ALJ did not discuss the exclusion of Mr. Ephrim's limitations because the ALJ is required to explain his own reasoning.

In conclusion, the ALJ's failure to include, or explain the exclusion of, Mr. Ephrim's moderate limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, and his abilities to travel in unfamiliar places or use public transportation, constitutes reversible error. Therefore, on remand, the ALJ should provide an adequate explanation as to why all of the State Agency psychologists' limitations were not included in Mr. Ephrim's final RFC assessment or otherwise include the limitations in the RFC assessment.

ii. *Medical Opinion of Treating Psychiatrist Dr. Yahya*

Mr. Ephrim also argues that the ALJ did not include all of the moderate limitations assessed by his treating psychiatrist, Dr. Yahya, in his final RFC assessment. (Doc. 17 at 17-18). Specifically, Mr. Ephrim claims that the ALJ did not include, or explain the omission of, the following limitations regarding his abilities to: maintain attention and

concentration for extended periods; perform activities within a schedule, maintain attendance, and be punctual; sustain an ordinary routine without special supervision; work with others without distraction; complete a normal workweek or workday without interruption from psychologically based symptoms; and set realistic goals and or make plans independent of others. *Id.*

In response, the Commissioner contends that the ALJ included Dr. Yahya's findings in his assessment, even if he "didn't parrot" Dr. Yahya's exact language. (Doc. 19 at 8-9). In the alternative, the Commissioner argues the ALJ properly identified inconsistencies in Dr. Yahya's report that adequately explain and justify the exclusion of Dr. Yahya's limitations in the final RFC assessment. (Doc. 19 at 9).

Dr. Yahya began treating Mr. Ephrim in August 2016. (AR 1350). During Mr. Ephrim's initial consultation, Dr. Yahya set forth Mr. Ephrim's family, social, and personal history, including his history of substance abuse and prior treatment efforts. (AR 1350-55). In October 2016, Dr. Yahya completed a "Mental Residual Functional Capacity Questionnaire," assessing Mr. Ephrim's mental limitations. (AR 1132). In the questionnaire, Dr. Yahya opined that Mr. Ephrim has moderate limitations in his abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; get along

with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. (AR 1136-40).

The ALJ began his analysis of Dr. Yahya's medical opinion by detailing the findings in his questionnaire. (AR 33). The ALJ opined that Dr. Yahya's written statements in the questionnaire were consistent with his August 2016 treating notes. *Id.* Next, the ALJ reviewed Dr. Yahya's findings regarding Mr. Ephrim's self-reports of sobriety. (AR 35). Specifically, the ALJ found that despite reporting continued sobriety to Dr. Yahya, Mr. Ephrim tested positive for methamphetamine twice in October 2016. *Id.* In addition, the ALJ found inconsistencies regarding when Mr. Ephrim allegedly began using methamphetamine. *Id.* Indeed, the ALJ opined, Mr. Ephrim reported to Dr. Yahya that he began using methamphetamine in April 2016, but his prior medical records suggest methamphetamine use dating back to January 2012. *Id.*

The ALJ stated that he gave "significant weight" to Dr. Yahya's opinion. (AR 36). However, the ALJ also critically discussed multiple inconsistencies found in Dr. Yahya's report. *Id.* For example, the ALJ compared Dr. Yahya's prognosis of Mr. Ephrim's health as "good," with his findings of recurring clinical manifestations and symptoms. *Id.* Additionally, the ALJ noted Dr. Yahya's conclusion that Mr. Ephrim was limited in many areas of social functioning, but had no significant limitation in his ability to interact with the general public. *Id.* Overall, the ALJ concluded that Dr. Yahya's medical opinion was supported by his treating notes and his recorded findings on mental status examination. *Id.*

As explained in more detail above, the Court finds that the following limitations have already been accounted for in the RFC assessment or otherwise adequately

discussed by the ALJ: Mr. Ephrim's ability to complete a normal workday without psychological interruption and to perform at a consistent pace without an unreasonable number and length of rest periods; and his ability to work in coordination with or in proximity to others without being distracted by them. In addition, Mr. Ephrim concedes that his final RFC assessment incorporates four of the limitations prescribed by Dr. Yahya, including his abilities to: understand, carry out, and remember detailed instructions; maintain attention and concentration for extended periods; and get along with coworkers without distracting them or exhibiting behavioral extremes. (Doc. 20 at 2-3). Accordingly, only three limitations identified by Dr. Yahya are not included in the final RFC assessment and were not discussed by the ALJ. *Id.* These limitations include Mr. Ephrim's abilities to: perform activities within a schedule, maintain attendance, and be punctual; sustain an ordinary routine without special supervision; and set realistic goals and make plans independent of others. *Id.*

The ALJ is not required to directly correlate each medical finding in the record with a specific clause in the RFC assessment. *Keyes-Zachary*, 695 F.3d at 1163. However, the ALJ must, at a minimum, either (1) adopt the opinion of Dr. Yahya such that his findings are reflected in the RFC assessment, or (2) reject his opinion, or any portion of it, and explain his reasons for doing so. *See* SSR 96-5, 1996 WL 374183, at *5. In explaining his reasoning for rejecting a physician's medical opinions, the ALJ must clearly articulate his rationale, allowing any subsequent reviewers to ascertain his conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted).

Here, the ALJ makes no mention of many of Mr. Ephrim's limitations, nor does

his RFC assessment adequately reflect all of Dr. Yahya's findings. Notably, while the ALJ goes to great lengths to highlight inconsistencies in Dr. Yahya's report, this analysis coincides with the ALJ's conclusion that he affords Dr. Yahya's opinion "significant weight." (AR 36). In addition, while the ALJ notes that Dr. Yahya made several findings that Mr. Ephrim was not "significantly limited" in his abilities, the ALJ never states how these findings explain or otherwise contradict the limitations the ALJ fails to include in the final RFC assessment. These untethered statements and seemingly contradictory conclusions are inadequate to dismiss a medical opinion which should have been afforded "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Therefore, the Court finds that the ALJ did not apply the correct legal standards in evaluating the opinion of Dr. Yahya, and remand is required.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to properly consider the opinions of Dr. Cherry, Dr. Bridges, and Dr. Yahya. The Court will not address Mr. Ephrim's remaining claims because they may become moot upon remand.

**IT IS THEREFORE ORDERED** that Mr. Ephrim's *Motion to Reverse and Remand with Supporting Memorandum*, (Doc. 17), is **GRANTED IN PART** and this case is **REMANDED** to the Commissioner for further proceedings.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE